**In The United States District Court**
**For The District of Maryland**
**Northern Division**

| | | |
|---|---|---|
| DARREN BROWN | * | |
|    Plaintiff | * | Civil Action No. |
| vs. | * | 11-CV-1901 RDB |
| DETECTIVE EDWARD BAILEY, III, et al. | * | |
|    Defendants | * | |

* * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT BY DEFENDANT MAYOR AND CITY COUNCIL OF BALTIMORE**

Introduction

On November 23, 2011, Plaintiff filed an Amended Complaint alleging that he was arrested, without probable cause, on charges of attempted murder, and held in detention for a period in excess of seven months before the charges against him were dismissed with an entry of a *non prosequi*. In Count III, Plaintiff alleges claims against the Mayor and City Council of Baltimore (hereinafter "the City"), under 42 U.S.C. § 1983 for violations of federal law committed by its police officers, pursuant to a City policy and custom.

On December 7, 2011, the City filed a Motion To Dismiss Amended Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). The City asserts that it is entitled to a dismissal of Plaintiff's claims against it because Plaintiff has not alleged sufficient facts connecting the City to his arrest and wrongful detention, and because the City, as

a matter of law, is not responsible for the alleged constitutional violations by its Police Department at issue in this action.

In Count III, Plaintiff alleges that his arrest and extended detention were the result of the City's custom, policy and practice of failing to ensure that its Police Department properly hire, train and supervise its police officers regarding the establishment of probable cause prior to bringing charges (Amended Complaint ¶ 60). More specifically, Plaintiff alleges that he was injured as a result of the Police Department's pattern, practice and policy of encouraging the bringing of charges without probable cause, while failing to establish accountability for a finding of lack of probable cause (Amended Complaint ¶ 61), and of its failure to comply with a policy to seek the review by a City assistant state's attorney of charges of attempted murder prior to bringing charges (Amended Complaint ¶ 62). Together, these deficiencies created a significant risk of arrest for murder and/or attempted murder without probable cause, and in fact resulted in Plaintiff's arrest. (Amended Complaint ¶¶ 59, 63) Plaintiff additionally alleges that, at the time of his arrest, the Police Department had a history of unlawful policies and practices which resulted in the arrest of numerous suspects without probable cause. (Amended Complaint, ¶ 47) Finally, Plaintiff alleges that the City knew, or should have known, that the Police Department's deficiencies resulted in a significant number of arrests without probable cause, that the City exercised substantial control over the Police Department, through the hiring, managing, and removal of its Commissioner, as well as input into day-to-day activities and policies of the Police Department, and therefore should have taken action to abate the wrongful Police Department practices and policy. (Amended Complaint, ¶¶ 59-61)

**ARGUMENT**

I. Plaintiff Has Alleged Specific Facts Sufficient To State A Monell Claim Against the Mayor and City Council of Baltimore

A municipality may be liable under 42 U.S.C. § 1983 if it causes a constitutional deprivation through an official policy or custom. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-91, 56 L.Ed.2d 611, 98 S. Ct. 2018 (1978). Municipal policy may be found in written ordinances and regulations, 436 U.S. at 690, in affirmative decisions of policymaking officials, or in certain omissions on the part of policymaking officials that evidence deliberate indifference to the rights of citizens, City of Canton v. Harris, 489 U.S. 378, 388-89, 103 L.Ed.2d 452, 106 S.Ct. 1292 (1989). Alternatively, a custom may arise if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691 (internal quotation marks omitted). Municipal liability will attach for policies or customs having a "specific deficiency or deficiencies...such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." Spell v. McDaniel, 824 F.2d 1380, 1389-91 (4th Cir. 1987).

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts, which if accepted as true, state a claim to relief that is "plausible on its face." Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570, 127 S. Ct 1955, 167 L.Ed.2d 929 (2007). The determination of whether a complaint states on its face a plausible claim for relief, sufficient to survive a Rule 12(b)(6) motion, will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 19, 37, 173 L.Ed.2d 868 (2009). However, when a defendant moves to dismiss a civil rights claim, a court

"must be especially solicitous of the wrongs alleged" and "must not dismiss the claim unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (quoting Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988))(emphasis in original). See also, Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006).

In the instant case, Plaintiff has alleged that the actions of Officers Bailey, Southard, Min, and Carresquillo were the result of Baltimore Police Department's custom, policy and practice of failing to properly hire, train and supervise its police officers, and the result of policies through which the Police Department encouraged and rewarded officers for arrests, regardless of whether probable cause was found to exist, without any evaluation of whether dropped charges lacked probable cause, and without any accountability for arrests without probable cause. The failure to seek review by an assistant state's attorney was an additional deficiency which contributed to the risk of the exact type of injury suffered by Plaintiff. Together, these specific deficiencies, if assumed to be true, plausibly support the allegation that arrests for murder and/or attempted murder without probable cause, such as occurred in the instant case, were almost bound to happen, and that there were other such arrests without probable cause. Plaintiff further alleges that the City should have been aware of these Police Department deficiencies and the resulting arrests without probable cause, and should have, but failed to take steps to abate those practices, customs and policies, which it had authority to do.

## II. Baltimore City Can Be Liable, under § 1983, For Unconstitutional Custom and Practice of Its Police Department

Plaintiff does not base his claims against the City on the basis of *respondeat superior,* and acknowledges that the Baltimore Police Department is an agency and instrumentality of the State of Maryland. However, Plaintiff alleges that the City exercised substantial control over the Police Department, and that the Police Department deficiencies alleged were sufficiently serious, widespread, and ongoing such that even those who were removed from the day-to-day operations of the Police Department should have known of the deficiencies, and the actual harm they were causing.

The City contends that as a matter of law, since it does not have authority to direct and supervise the daily operations of the Police Department, it cannot be liable for the Department's actions, citing Chin v. City of Baltimore, 241 F. Supp. 2d 546 (D. Md. 2003). However, Chin does not stand for the proposition that the City cannot be liable, under § 1983, for unconstitutional acts by the Baltimore Police Department. In Chin, the Plaintiff alleged that he was illegally detained and his premises unconstitutionally searched by the Baltimore Police Department, and sued the individual officer, the Police Department, and the City. The court granted summary judgment in favor of the Police Department, because the plaintiff failed to plead facts that established that the wrongful search was the result of a custom or policy of the Police Department, and because it could not be inferred, from allegations of a single incident, that the Police Department itself caused the wrong. 241 F.Supp.2d. at 549. The court also refused to hold the City liable, both because plaintiff failed to allege a custom or practice sufficient to state a Monell claim, and because the City government "does not wield enough

control over the Baltimore Police Department to be subject to liability for the Baltimore Police Department's actions." Id.  The emphasis should be on "actions," specific to the single incident, as opposed to a widespread custom or practice.

One must probe the two cases cited in Chin as the basis for its granting the City's motion to dismiss in order to determine that the opinion does not stand for the principle that the City cannot be liable for unconstitutional conduct by its Police Department.  The opinion cited Clea v. Mayor of Baltimore, 312 Md. 662, 541 A.2d 1303 (1988), in which the Court of Appeals ruled that the City cannot be liable for the acts of its Police Department under the doctrine of *respondeat superior*.  However, the Clea Court expressly noted in dicta that "the General Assembly's designation of the Baltimore City Police Department as a state agency would not be controlling for all purposes.  For example, with regard to federal law liability under 42 U.S.C. § 1983, the state law classification of the Baltimore City Police Department would not be decisive, and the Baltimore City Police Department might well be regarded as a local government agency." 312 Md. at 670 n.5.  Similarly, in Carter v. Mayor and City Council of Baltimore, 164 F. Supp. 2d 509, 517-8), also cited by Chin,  the court granted summary judgment in favor of the City, not because the City could not be liable for a wrongful detention instigated by its Police Department, or because the Baltimore Police Department is a State agency. Rather, the court ruled that the plaintiff had failed to show that there was a policy or custom of the City which led to the deprivation of his constitutional rights, and that Plaintiff's improper detention instead was caused by the failure of the criminal justice system to afford him a prompt hearing.   164 F. Supp. at 518-9.  This clearly implies that a Monell claim against the City based on wrongful conduct by its Police Department could survive, if sufficient facts were alleged.

The Fourth Circuit recently rejected a similar argument by the City that it cannot be liable for Police Department policies, noting that "[b]ecause of the strong practical links between the City and the Police Department, this argument has been rejected in three other cases." Humbert v. O'Malley, 2011 U.S. Dist. LEXIS 137182, *18 (November 29, 2011, D. Md.). See, Wiley v. Mayor & City Council of Balt., 48 F.3d 773, 776 (4th Cir. 1995)(citing Hector v. Weglein, 558 F. Supp. 194, 197-99 (D. Md. 1982) and Wilcher v. Curly, 519 F. Supp. 1, 3-4 (D. Md., 1980)); and Mason v. Mayor & City Council of Balt, 1995 U.S. Dist. LEXIS 4443, 1995 WL 168037, at *4 (D. Md. 1995). In Humbert, the City argued that Hector and Wilcher had limited relevance because they dealt primarily with Eleventh Amendment immunity, not municipal liability under § 1983, just as the City argues in the instant case that Mason does not apply. 2011 U.S. Dist. LEXIS 137182 at *20, fn. 16. The Humbert Court responded that the Fourth Circuit in Wiley made no such distinction when citing those cases. Id, citing Wiley, 48 F.3d at 776. Similarly, Mason made no such distinction, stating that "this Court concludes that the City maintains sufficient practical knowledge of and control over the Police Department to withstand dismissal of this § 1983 action." 1995 U.S. Dist. LEXIS 4443, at *10. In Humbert, the plaintiff alleged that around the time of his arrest, police told crime lab technicians not to follow up on DNA evidence found at crime scenes in at least nine cases. The Court ruled that this allegation was "significant enough that even those individuals removed from the day-to-day operations of the Police Department should have known about this police misconduct," and accordingly denied the City's motion to dismiss. 2011 U.S. Dist. LEXIS 137182 at * 20.

Similarly, in Brown v. Tshamba, 2011 U.S. Dist. LEXIS 77513 (July 18, 2011, D. Md.), involving allegations of excessive force by a Baltimore Police officer, this Court declined to

dismiss §1983 Monell claims against the City. The Court noted that although under Maryland law, the City's only control over the Police Department is through the hiring and removal of the Commissioner, this Court has consistently held that the City's "involvement in and knowledge of the affairs of the Baltimore City Police Department ...preclude [] the use of state sovereign immunity to shield...[the] City from liability under § 1983." (Citing <u>Mason v. Mayor and City Council of Baltimore</u>, No. 95-41, 1995 U.S. Dist. LEXIS 4443, 1995 WL 168037 at *4 (D. Md. 1995)(citations in original) The Brown court held that the plaintiff sufficiently alleged that the City knew or should have known about the history of the officer's misconduct and that the failure to discipline him was a causative factor in the shooting at issue. "This Court finds the allegations significant enough that even those individuals removed from the day-to-day operations of the BPD should have known about Officer Tashamba's misconduct." 2011 U.S. Dist. LEXIS 77513 at *20-21.

In <u>Mason</u>, *supra*, this Court noted that the City maintains sufficient practical knowledge of and control over the Baltimore Police Department to withstand dismissal of the § 1983 action. "A municipality's failure to act to correct established policies or customs that are known to violate the constitutional rights of its citizens is actionable under § 1983." 1995 U.S. Dist. LEXIS 4443 at *11. A plaintiff is entitled to relief if he can show that a "policy of inaction" exists, and that such a policy was a direct cause or a driving force behind the alleged constitutional violation. <u>Id</u>., citing <u>Monell</u>, 436 U.S. at 694.

In the instant case, Plaintiff has pleaded specific facts, which, if assumed to be true, plausibly support an inference that the Baltimore Police Department had a widespread and ongoing custom and policy which promoted arrests without probable cause, which failed to

provide any accountability for arrests without probable cause, and which in fact resulted in Plaintiff's arrest, as well as numerous other arrests, without probable cause. Plaintiff has further pleaded that the scope and nature of this wrongful conduct by the Police Department was significant enough that the City should have known about, and abated, that misconduct, even if removed from the day-to-day operations of the Police Department, and that the City's policy of inaction was a direct cause of the violation of Plaintiff's constitutional rights.

### III. Plaintiff Should Be Allowed Discovery Of Evidence Exclusively Within Defendants' Custody and Control

Plaintiff contends that verifiable information exists which establishes that there was a widespread and ongoing practice of arrests without probable cause by the Police Department, of which the City was, or should have been aware, and abated, and which was the direct causative factor of his improper arrest. However, discovery is required to verify and confirm such information, which is exclusively in the Defendants' control. Plaintiff requires records depositions, and the depositions of individuals, which will verify the unconstitutional pattern and practices, within the Police Department and the Baltimore City State's Attorney's office, which encouraged, and resulted in numerous arrests without probable cause. Accordingly, Plaintiff requests that this Court deny, or in the alternative withhold ruling on, the City's Motion To Dismiss, and direct that discovery be permitted by Plaintiff into the following areas: production of policies, practices, procedures, training records and general orders, in place at the time of the occurrence, relating to murder/attempted murder investigations and the charging procedures relative to same; policies, practices, procedures, training records, and general orders, in place at the time of the occurrence, relating to the identification and verification of the identification of

such suspects; policies, practices, procedures and general orders relating to any officer performance evaluation systems in place for two years prior and one year after the date of the occurrence; any and all reports, studies, evaluations, or statistics maintained by the Police Department and the Baltimore City State's Attorney's office relative to the incidence of false arrests, inaccurate identification of suspects, improper incarcerations, conviction/acquittal/dismissal/stet statistics ( relative to murder and attempted murder cases) for a period of two years before and one year after the occurrence, broken down between instances when Assistant State's Attorneys were utilized to review statements of probable cause and/or charging documents prior to charging and/or arrest of the suspect, and when an ASA was not so utilized; and records of sustained claims, complaints and lawsuits alleging arrest for murder/attempted murder by the Police Department without probable cause, for a period of five years before and two years after the occurrence.

Plaintiff should be allowed the opportunity to develop his factual allegations that there was a Police Department policy which promoted arrests without probable cause, and a widespread and ongoing practice of arresting suspects for murder/attempted murder without probable cause, and that a policy of inaction by the City relative to such policy and practice was a direct cause behind the violation of his constitutional rights.

As an indicator that such discovery is likely to produce admissible evidence, Plaintiff attaches as **Exhibit 1** a Baltimore Sun article, dated April 29, 2009. In that article, Margaret T. Burns, spokesperson for State's Attorney Patricia C. Jessamy, said that the office had opened an investigation into errors by police and prosecutors. Anthony Guglielmi, spokesperson for the Police Department, said that the Police Department was reviewing charging procedures.

**<u>Conclusion</u>**

For reasons stated above, Plaintiff respectfully requests that this Court deny Defendant, Mayor and City Council of Baltimore's, Motion To Dismiss the Amended Complaint under Rule 12(b)(6), or in the alternative, hold the motion *sub curia*, and direct that Plaintiff be allowed discovery into the Police Department policies and custom at issue in this action.

Respectfully submitted,

**ENGEL & ENGEL, P.A.**

/s/
Lon C. Engel #02470
11 East Lexington Street, Suite 200
Baltimore, Maryland 21202
Telephone: (410)727-5095
Facsimile: (410) 727-1422
Email: lengel@engellaw.com

*Attorney for Plaintiff*