IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARREN BROWN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-11-01901 |
| EDWARD BAILEY, III, *et al.* | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This is a civil rights action for damages resulting from the alleged unlawful arrest of Plaintiff Darren Brown ("Plaintiff" or "Brown").  Specifically, the Complaint alleges that Defendants Detective Edward Bailey, III ("Bailey"), Officer Paul Southard ("Southard"), Officer Julian Min ("Min"), Officer Felipe Carrasquillo ("Carrasquillo") (collectively "officer Defendants"), the Baltimore City Police Department ("BCPD"), and the Mayor and City Council of Baltimore (collectively "the City") violated Plaintiff's rights under the Fourth and Fourteenth Amendment of the Constitution of the United States by arresting and detaining him without probable cause from August 6, 2008 to March 13, 2009.  Pending before this Court are the Defendants' Motions to Dismiss Plaintiff's Amended Complaint (ECF Nos. 16, 17 & 20) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Also pending before this Court are Defendants Baltimore City Police Department and Mayor and City Council of Baltimore's Motions to Dismiss Plaintiff's original Complaint (ECF Nos. 10 & 12).  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).

1

For the reasons that follow, this case will be bifurcated under Rule 42(b) of the Federal Rules of Civil Procedure so that the Plaintiff's claims against the officer Defendants will first be addressed, and the claims against Defendants Baltimore City Police Department and the Mayor and City Council of Baltimore will be addressed as necessary, depending upon the status of the constitutional claims made against the officer Defendants. Thus, Plaintiff's claims against Defendants Baltimore City Police Department and the Mayor and City Council of Baltimore are STAYED pending resolution of Plaintiff's claims against Defendants Edward Bailey, Paul Southard, Julian Min and Felipe Carrasquillo.

Accordingly, Defendants Mayor and City Council of Baltimore's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 16) and Defendant Baltimore City Police Department's Motion to Dismiss said Amended Complaint (ECF No. 17) are DENIED WITHOUT PREJUDICE, subject to refiling. Defendants Edward Bailey, Paul Southard, Julian Min and Felipe Carrasquillo's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 20) is DENIED.[1]   Additionally, because Plaintiff's Amended Complaint superseded the original Complaint, Defendants Baltimore City Police Department and Mayor and City Council of Baltimore's Motions to Dismiss Plaintiff's original Complaint (ECF Nos. 10 & 12) are DENIED as MOOT.[2]

## BACKGROUND

This Court accepts as true the facts alleged in the Plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  On the night of August 5 to August 6, 2008,

---

[1] The officer Defendants are only charged in Count I of the Amended Complaint.
[2] *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, "an amended pleading ordinarily supersedes the original and renders it of no legal effect") (citing *In re Crysen/Monteray Energy Co.*, 226 F.3d 160, 162 (2nd Cir. 2000)).

a shooting involving two perpetrators occurred at a Chinese restaurant on the 2700 block of Harford Road, Baltimore, MD.   Pl.'s Am. Compl. ¶ 8, ECF No. 13.   Officer Felipe Carrasquillo ("Carrasquillo") took the initial report and Detective Edward Bailey ("Bailey") was assigned to the investigation.   *Id.* ¶ 9.   A surveillance tape recovered from the crime scene by Detective Bailey led to the identification of one suspect as David Jefferson and the other as an individual nicknamed "Mookie."   *Id.* ¶¶ 12-15.   Specifically, Officers Julian Min ("Min") and Paul Southard ("Southard") identified the first suspect as David Jefferson and a witness, Mr. Andre Rucker ("Mr. Rucker") identified the second suspect as a man nicknamed "Mookie . . . [who] hangs in the 2700 block of the Alameda."   *Id.* ¶¶ 12-13. Although Officer Southard had initially been unable to identify the second suspect, Mr. Rucker's identification and Southard's several encounters with both David Jefferson and Plaintiff allegedly caused him to believe that Plaintiff, Darren Brown, was a possible suspect. *Id.* ¶ 15.   Officer Southard recorded this belief in his statement to Major Dickson.   *Id.* However, Officers Southard, Min and Carrasquillo did not further investigate whether Plaintiff was actually known by the nickname "Mookie" nor did they re-interview Mr. Rucker to determine whether the person identified as "Mookie" was in fact Darren Brown. *Id.* ¶ 16.   As a result, Plaintiff alleges that Detective Edward Bailey, III ("Bailey") prepared a false and misleading probable cause statement identifying him as the second suspect in the shooting.   *Id.* ¶¶ 17-18.   As such, despite the lack of evidence linking him to the crime, a warrant for Plaintiff's arrest was allegedly obtained "without the approval of a prosecutor, in violation of police department procedure."   *Id.* ¶¶ 19-20.

On August 6, 2008, Officers Min and Southard arrested Plaintiff in relation to the shooting. *Id.* ¶ 22. The next day, August 7, 2008, "Plaintiff was formally charged with attempted murder, assault, armed robbery and other charges." *Id.* ¶ 23. Plaintiff alleges that these charges were "brought without review by or approval of a prosecutor . . . [and that] Defendants Bailey, Southard, Min and Carrasquillo made no further attempts" to confirm whether Plaintiff was in fact "Mookie" and in fact involved in the shooting. *Id.* ¶¶ 23-24.

In December of 2008, upon seeing the surveillance tape, David Jefferson's mother identified the second suspect as being Kevin Johnson, Jr., David Jefferson's cousin, thereby exonerating Plaintiff. *Id.* ¶ 25. According to Plaintiff, his counsel communicated this information to the State's Attorney's Office on both December 4, 2008 and December 19, 2008. *Id.* ¶ 26. However, no action was taken until the spring of 2009, when the new Assistant States' Attorney assigned to the case, Ms. Madigan, asked the BCPD to reopen the investigation and interview David Jefferson's mother. *Id.* ¶¶ 27-30. This new investigation led to the dismissal of the charges against Plaintiff and his release on March 13, 2009. *Id.* ¶ 30. On April 30, 2009, Kevin Johnson, who was known as "Mookie" at the time of the shooting, was charged and subsequently convicted of the August 2008 shooting. *Id.* ¶ 31.

On July 11, 2011, Plaintiff filed the Complaint in this case which he later amended on November 23, 2011. *See* ECF Nos. 1 & 13. The Amended Complaint alleges violations of 42 U.S.C. § 1983 against the Defendants. Pl.'s Am. Compl., ECF No. 13. Specifically, in Count I, Plaintiff alleges that "Defendants Bailey, Southard, Min and Carrasquillo acted with deliberate and/or reckless disregard for the truth," while conducting their investigation into

the shooting, resulting in Plaintiff's unlawful arrest and detention from August 6, 2008 to March 13, 2009. *Id.* ¶ 36-37. Count II alleges that the Baltimore City Police Department's ("BCPD") customs, policies and practices in terms of officer training, officer evaluations and arrests without probable cause resulted in his unlawful arrest. *Id.* ¶¶ 46-51. Finally, Count III alleges that Defendants Bailey, Southard, Min and Carrasquillo's actions were the result of the Mayor and the City Council of Baltimore's (collectively "the City") customs, policies and practices regarding (1) the BCPD's hiring and training of police officers, (2) its assessment of arrest policies and practices, (3) its failure to seek prosecutorial review and (4) the City's indifference and lack of efforts at halting the "widespread and on-going practice of . . . arresting individuals without probable cause." *Id.* ¶ 64.

<u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.* at 1950; *see also Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011).

<u>ANALYSIS</u>

**I.    Claims against the City and the Baltimore City Police Department (Counts II & III)**

In general, Plaintiff contends that Defendants Baltimore Police Department ("BCPD") and Mayor and City Council of Baltimore's (collectively "the City") failure to properly train, supervise and discipline Detective Bailey and Officers Southard, Min and Carrasquillo (collectively "officer Defendants") resulted in the alleged Section 1983 violations.   Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable."   Under 42 U.S.C. § 1983, a municipality or employer cannot be held vicariously liable based solely on an agency relationship.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978).  Thus, the City and the BCPD in this case cannot be found liable unless the Plaintiff first establishes that his constitutional rights were violated by the alleged unlawful arrest and detention conducted by the officer Defendants.

Once Plaintiff establishes that the officer Defendants violated his constitutional rights, the City and the BCPD may be liable under Section 1983 where "the constitutionally offensive acts of city employees [were] taken in furtherance of some municipal 'policy or custom.' "   *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell*, 436 U.S. at 694).  A plaintiff may establish the existence of such a policy or custom in several ways: "1) through an express policy, such as a written ordinance or regulation; 2) through the decisions of a person with final policymaking authority; 3) through an omission, such as a

failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or 4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.' " *Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003)(quoting *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir. 1999)).

Although the parties have not requested it, Federal Rule of Civil Procedure 42(b), which governs bifurcation, provides that a court may order a separate trial of one or more separate issues or claims "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b).  The court has broad discretion to bifurcate claims for trial and its decision will only be set aside for clear abuse.  *See Dixon v. CSX Transp., Inc.,* 990 F.2d 1440, 1443 (4th Cir.), *cert denied,* 510 U.S. 915 (1993).  This Court has consistently held that in the context of Section 1983 claims, bifurcation of the *Monell* supervisory claims from the individual claims is appropriate and often desirable.  *See, e.g., James v. Frederick County Pub. Schs.,* 441 F. Supp. 2d 755, 762 (D. Md. 2006);  *Robertson v. Prince George's County*, 215 F. Supp. 2d 664, 665 (D. Md. 2002); *Dawson v. Prince George's County,* 896 F. Supp. 537, 540 (D. Md. 1995); *Marryshow v. Town of Bladensburg,* 139 F.R.D. 318, 319-20 (D. Md. 1991).  As such, this Court finds that bifurcation is again warranted in the present case.

Although the Plaintiff has provided greater specificity in his constitutional claims against the officer Defendants in Count I, he presents more generalized accusations against the Baltimore City Police Department in Count II and against the Mayor and City Council of Baltimore in Count III.  There are general allegations of a "history" of unlawful police activity and a "custom, policy and practice of failing to properly . . . train . . . police officers." Pl.'s Am. Compl. ¶¶ 47-48, 60, ECF No. 13.  While general in nature, these allegations

suffice to survive the subject motions to dismiss which are DENIED WITHOUT PREJUDICE, subject to potential refiling.

To prove a pattern and practice case against the BCPD and the City, Plaintiff would need to submit evidence of prior misconduct by law enforcement personnel and of prior arrests without probable cause as well as the BCPD and the City's lack of response to such misconduct.  A stay of discovery serves the interests of efficiency and judicial economy, as there is no reason to delve into matters relating to the BCPD and the City's policies and practices unless and until the officer Defendants are found to have violated the Plaintiff's constitutional rights.  Accordingly, this case will be bifurcated under Rule 42(b) of the Federal Rules of Civil Procedure such that the Plaintiff's claims against the officer Defendants will first be addressed, and the claims against the BCPD and the City will be addressed subsequently as necessary.  Therefore, Plaintiff's claims against the City and the BCPD are STAYED pending the resolution of Plaintiff's claims against the officer Defendants.  As a result, Defendants Mayor and City Council of Baltimore's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 16) and Defendant Baltimore City Police Department's Motion to Dismiss the Amended Complaint (ECF No. 17) are DENIED WITHOUT PREJUDICE, subject to refiling.

## II.     Claims against the officer Defendants (Count I)

In this action for damages, Plaintiff alleges that Detective Bailey and Officers Southard, Min and Carrasquillo's "reckless disregard for the truth" and failure "to conduct a reasonable investigation" resulted in his unlawful arrest and incarceration from August 6, 2008 to March 13, 2009 in violation of his rights under the Fourth and Fourteenth

Amendment of the Constitution of the United States.  Pl.'s Am. Compl. ¶¶ 33-42, ECF No.

13.  Plaintiff also alleges that the officer Defendants failed to pursue exculpatory evidence

and submitted a materially false statement of probable cause.  Conversely, in their motion to

dismiss the officer Defendants argue that Plaintiff fails to state a claim upon which relief can

be granted because he "does not allege sufficient facts to demonstrate that [they] lacked

probable cause" for the arrest.  Mem. in Supp. of Defs.' Mot. to Dismiss Count I of Pl.'s

Am. Compl. at 8, ECF No. 20.  Alternatively, the officer Defendants argue that Count I

should be dismissed because they are entitled to qualified immunity.

   A civil rights action under Section 1983 allows "a party who has been deprived of a

federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at

Monterey, Ltd.*, 526 U.S. 687, 707 (1999).  The civil rights statute 'is not itself a source of

substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere

conferred.' "  *Albright v. Oliver*, 510 U.S. 266, 271 (1994), quoting *Baker v. McCollan*, 443 U.S.

137, 144, n. 3 (1979).  To state a claim under Section 1983, a plaintiff must allege that: 1) a

right secured by the Constitution or laws of the United States was violated and 2) the alleged

violation was committed by a person acting under the color of state law.  *See West v. Atkins*,

487 U.S. 42, 48 (1988).  Liability is appropriate under Section 1983 only to remedy violation

of federally protected rights.  *See Baker v. McCollan*, 443 U.S. at 145-46; *Clark v. Link*, 855

F.2d 156, 161, 163 (4th Cir.1988) (holding that Section 1983 claims rest on violations of the

Constitution or statutes of the United States, not solely on violations of state statutes or

common law torts).

In this case, Plaintiff has alleged that he was arrested and detained without probable cause for seven months.  Specifically, Plaintiff has alleged that Detective Bailey prepared a statement of probable cause for his arrest, without prosecutorial review, based on the witness identification of an individual named "Mookie" on the surveillance footage and on Officer Southard's belief and feeling that Plaintiff was said individual.  Plaintiff further alleges that the officer Defendants never re-interviewed the witness in question, Mr. Rucker, to determine whether the individual he identified as "Mookie" was in fact Plaintiff Darren Brown.  Moreover, Plaintiff claims that Defendants Bailey, Southard, Min and Carrasquillo failed to reasonably conduct their investigation given Plaintiff's statements that he was not nicknamed "Mookie" and the exculpatory testimony of the actual second suspect's mother first offered in December of 2008.  Finally, Plaintiff alleges that it was not until the assignment of a new Assistant State's Attorney to his case in the spring of 2009, that the investigation into his case was reopened.  This new investigation led to an interview of the second suspect's mother and the dismissal of the charges *non prosequi* against Plaintiff.

As a result, Plaintiff's Amended Complaint states "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009).  Plaintiff's Amended Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *see also A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).  In fact, not only does Plaintiff allege that his rights under the Fourth and Fourteenth Amendment of the Constitution were violated, but he also

identifies Detective Bailey and Officers Southard, Min and Carrasquillo as the persons acting under the color of state law who committed said violations.   Moreover, this Court is not indifferent to the fact that Plaintiff was incarcerated for a period of seven month despite the initial presence of surveillance footage and of a witness, Mr. Rucker, which could have led to his prompt release.

As stated above, the officer Defendants alternatively argue that even if Plaintiff successfully states a claim against them, they are entitled to qualified immunity.   Government officials are generally protected by qualified immunity when they perform the discretionary duties of their offices.   *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).   The affirmative defense of qualified immunity shields an officer from monetary damages as long as his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

Courts have traditionally engaged in a two-step analysis when determining whether an officer is protected by qualified immunity.   *Wilson v. Layne*, 526 U.S. 603, 609 (1999).   First, a court determines whether a constitutional right has been violated.   Second, "assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right."   *Brown v. Gilmore*, 278 F.3d 362, 367 (2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).   The United States Supreme Court has modified this rigid, two-tiered approach, by allowing reviewing judges to evaluate the two factors in whatever order they wish, in view of the unique facts of a case.   *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)

("[t]he judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

This Court is mindful of "the importance of resolving immunity questions at the earliest possible stage in the litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). However, the United States Court of Appeals for the Fourth Circuit has noted that principles of qualified immunity do not " 'give special substantive favor to the defense.' " *Henry v. Purnell*, 619 F.3d 323, 333 (4th Cir. 2010) (quoting *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003)). It is simply premature to rule upon the issue of qualified immunity in the context of a motion to dismiss as there has been no discovery or development of a record in this case. Indeed, the issues of whether there was a constitutional violation and "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier,* 533 U.S. at 202, are highly fact-dependent. Moreover, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). Thus, Plaintiff has properly stated a claim under 42 U.S.C. § 1983 against the officer Defendants. Therefore, Defendants Edward Bailey, Paul Southard, Julian Min and Felipe Carrasquillo's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 20) is DENIED, and discovery shall proceed as to those claims.

<u>CONCLUSION</u>

For the reasons stated above, this case will be bifurcated under Rule 42(b) of the Federal Rules of Civil Procedure and the Plaintiff's claims against the officer Defendants will be initially addressed.  The claims against Defendants Baltimore City Police Department and Mayor and City Council of Baltimore will be addressed as necessary in subsequent proceedings.  Therefore, Plaintiff's claims against Defendants Baltimore City Police Department and Mayor and City Council of Baltimore are STAYED pending resolution of Plaintiff's claims against Defendants Edward Bailey, Paul Southard, Julian Min and Felipe Carrasquillo.

Consequently, Defendants Mayor and City Council of Baltimore's Motion to Dismiss Plaintiff's Amended (ECF No. 16) and Defendant Baltimore City Police Department's Motion to Dismiss the Amended Complaint (ECF No. 17) are DENIED WITHOUT PREJUDICE, subject to refiling.  Defendants Edward Bailey, Paul Southard, Julian Min and Felipe Carrasquillo's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 20) is DENIED.  Additionally, because Plaintiff's Amended Complaint superseded the original Complaint, Defendants Baltimore City Police Department and Mayor and City Council of Baltimore's Motions to Dismiss Plaintiff's original Complaint (ECF Nos. 10 & 12) are DENIED as MOOT.

Separate Orders follow.


Dated:        June 13, 2012               /s/_____

                                          Richard D. Bennett
                                          United States District Judge