**In The United States District Court**
**For The District of Maryland**

| | | |
|---|---|---|
| DARREN BROWN | * | |
|    Plaintiff | * | Civil Action No. |
| vs. | * | 11-CV-1901   RDB |
| DETECTIVE EDWARD BAILEY, III, et al. | * | |
|    Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO THE BALTIMORE POLICE DEPARTMENT'S
MOTION TO QUASH AND FOR PROTECTIVE ORDER**

Plaintiff, Darren Brown, has propounded discovery to the Baltimore Police Department ("BPD") in this civil rights action against four BPD officers, filed under 42 U.S.C. § 1983. Plaintiff opposes the Motion To Quash, In Part, Subpoena Duces Tecum and Notice of Deposition Duces Tecum and For Protective Order filed by the BPD, on the grounds that the BPD has not met the "good cause" standard under Fed. R. Civ. Proc. 26(b)(1).

**Factual Background**

There was a shooting on the evening of August 5, 2008 at a carry-out restaurant in Baltimore City, involving two armed suspects, who thereafter fled the scene. A surveillance videotape of the crime was taken to the Police Station, where it was shown to Officers Min and Southard, who routinely patrolled the area of the crime. Both officers immediately recognized

Suspect # 1 as David Jefferson, but neither recognized Suspect #2 as Plaintiff, Darren Brown, even though both were familiar with him.  Next, two neighborhood men were brought in the review the tape: the first identified Suspect #1 as "David," while the second recognized Suspect #2 only by the nickname  "Mookie."   Det. Bailey, the investigating officer, asked Officer Southard if he knew anyone who used the street name Mookie, and Southard said  he "believed" that Darren Brown went by that name.  Det. Bailey then asked both officers to write a Form 95 Statement.  Officer Min's Statement was explicit: "Mr. David Jefferson...was recognized by this officer due to daily contact...I reviewed the videotape from the shooting.  I recognized him."   By contrast,  Officer Southard said: "Upon viewing the video of the shooting...this P/O believes the Suspects to be David Jefferson...and Darren Brown AKA Mookie of various address...I have had several encounters with both of these juveniles on a weekly basis and based on my viewing of the video I feel they both fit the suspects description to the best of my ability."  No one performed a databank search  to verify Officer Southard's mistaken "belief" that  Darren Brown used that nickname.  No one presented a photo array to the witness who identified "Mookie,"  to determine that the person  he identified was, in fact, Darren Brown.  It appears that  Detective Bailey  never sought or obtained approval from an Assistant State's Attorney for charges against Mr. Brown, even though he said he did in his investigative report, and even though such approval was required by BPD policy.  In his Application for Statement of Charges, Det. Bailey falsely represented:  "During this investigation .... Darren Brown...was identified by witnesses as suspect #2,"   when, in fact, no one had recognized, or identified, Darren Brown from the video.

In discovery of his bifurcated claims against the individual officers,[1] the Plaintiff served the BPD, as a third party, with a Subpoena and Notice of Records Deposition Duces Tecum. See **Exhibit 1** to BPD's Motion To Quash, ECF paper No. 41. After the BPD filed the instant Motion To Quash, In Part, And For Protective Order, the parties resolved their disputes regarding all but the following categories of Plaintiff's requests:

1.  <u>Requests Nos. 4-7: BPD written policies, protocols and procedures</u>

Plaintiff requested production of BPD's written policies, protocols, procedures and/or directives, in place at the time of the occurrence, relative to: a criminal investigation and charging of a crime involving firearms, and documentation thereof (Request #4); consultation with the State's Attorney's office prior to charging a crime involving firearms, and documentation thereof (#5); establishment of probable cause for a crime involving the use of firearms, and documentation thereof (#6); and the discovery or investigation of exculpatory evidence after an arrest of a suspect, and documentation thereof (#7).

2.  <u>Requests Nos. 26-33: BPD training materials</u>

Plaintiff requested production of all training materials provided by the BPD to each of the four Defendant officers relating to the investigation and/or charging of crimes involving firearms, including the establishment of probable cause (#s 26-29); and relating to the discovery and investigation of exculpatory, or potentially exculpatory, information after a suspect has been arrested (#s 30-33).

The BPD argues that it is entitled to an order quashing these requests pursuant to Fed. R.

---

[1] Plaintiff's *Monell* claims have been stayed by Order of this Court, pending resolution of his § 1983 claims against the four individual officers.

Civ. Proc. 26 (b)(1) on the grounds that that these requested records are relevant only to Plaintiff's bifurcated and stayed *Monell* claims. The BPD also suggests, but never explicitly states, that these requests are overbroad and burdensome. Finally, the BPD argues that Plaintiff failed to comply with Discovery Guideline #4 by setting the records deposition date without first consulting the BPD's counsel. For reasons stated below, the requests are relevant to Plaintiff's claims against the Defendant officers, and they are neither overbroad nor unduly burdensome.

## ARGUMENT

### I. The Requested Records Are Relevant.

The BPD misapprehends the purpose of the disputed requests. The Plaintiff does not seek discovery of the BPD's written policies/procedures/protocols and training materials for *Monell* purposes, to establish that the Defendants were inadequately trained, or for the purpose of arguing that a policy was the direct cause of the unconstitutional conduct by the officer Defendants. Plaintiff is pursuing discovery relative to his claims against the individual officers, that he was seized under a warrant not supported by probable cause, in violation of his Fourth Amendment rights. To succeed, Plaintiff must prove that the Defendants made material false statements in their affidavits, *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L.Ed. 667 (1978), or omitted from their affidavits "material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). Reckless disregard may be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," and that "when viewing all of the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson*

-4-

*v. Russo*, 212 F.3d 781, 788 (3rd Cir. 2000)(internal quotation marks omitted). With respect to omissions, "reckless disregard" may be demonstrated by evidence that an officer "failed to inform the judicial officer of facts [he] knew would negate probable cause." *Beauchamp v. City of Noblesville*, Inc., 320 F.3d 733, 743 (7th Cir. 2003). The presumption of reasonableness of a warrant may be rebutted where "a reasonably well-trained officer in [that] position would have known that his [application] failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986).

The requested BPD policies, procedures, protocols and training materials are relevant to the determination of whether a "reasonably well-trained officer" would have believed that there was probable cause for Plaintiff's arrest. The deviation from established departmental policy or protocol, or training, while not necessarily violative of a Constitutional right *per se*, may be an indicia of objective unreasonableness. For example, the Plaintiff alleges that Det. Bailey falsely represented in his report that he consulted with an ASA before bringing charges against Darren Brown, when he did not. In determining whether an officer could reasonably have believed that a warrant was supported by probable cause, courts frequently cite consultation with a superior and the approval of charges as relevant. *Torchinsky v. Siwinski*, 942 F.2d 257, 263 (4th Cir. 1990)(defendant consulted with his supervisor not once, but twice about the reliability of the victim's identification of the defendant, as well as the general course of the investigation, reflecting the absence of impulsive or reckless behavior). Accordingly, the failure to consult with a superior, especially when the failure violates a policy requiring such consultation and approval, may reasonably be inferred as reflective of impulsive or reckless behavior.

The BPD cites *Mangieri v. Clifton*, 29 F.3d 1012, 1017-18, n. 11 (5th Cir. 1994) for its contention that the failure of an officer to adhere to his department's policies, procedures or protocols is invariably "irrelevant" under the Fourth Amendment test for reasonableness. That is an incorrect reading of the case, which involved a warrantless arrest for disturbing the peace. The officers failed to give a warning before making the arrest, in violation of a department policy. The court undertook a detailed analysis of what a reasonable officer could have believed from the circumstances surrounding the plaintiff's arrest. It concluded that an officer reasonably could have believed that there was adequate proof of a violation of a related offense, which did not require a warning. Therefore, the violation of the policy requiring a warning, in this factual context, was irrelevant. Id. at page 1017-8. It should be noted that even though the court ultimately ruled that the policy violation was irrelevant to the plaintiff's Constitutional claims, it allowed discovery of departmental policy in order to make that determination. Similarly, in the instant case, the Plaintiff should be permitted discovery of BPD policies and procedures, in place at the time of the occurrence, regarding the determination of probable cause for a crime involving the use of firearms, regarding proper the process for witness identifications, regarding consultation with an ASA, and regarding the documentation of an investigation.

The BPD's reliance upon *Clements v. Prince George's County*, 1992 U.S. Dist. LEXIS 10454 (D.Md. 1992) is similarly misplaced. That case involved the attempt by a plaintiff to discover and utilize police training materials, for use in a bifurcated trial against individual officers, where the *Monell* claims had been stayed. The plaintiff sought the training materials for the purpose of arguing that his injuries were caused by the <u>inadequate</u> training on behalf of the Prince George's County Government, and the court ruled that any improper training was

irrelevant to the claims against the individual officers. As demonstrated above, proof of inadequate training is not the purpose of the Plaintiff's request in this instance. On the assumption that the Defendants were properly trained, the Plaintiff is entitled to discover what BPD policies, practices, and procedures and/or training the Defendants may have violated in the course of their investigation and arrest of Darren Brown as Suspect #2, or in their documentation of that investigation. Such violations could constitute evidence of reckless behavior.

## II. Plaintiff's Requests Are Not Overbroad or Unduly Burdensome.

In its Motion To Quash, the BPD asserted that "some" of Plaintiff's requests were overbroad and burdensome. However, it did not specifically allege that the two categories of requests which remain in dispute are overbroad or burdensome. The BPD also failed to articulate why these requests could be considered to be overbroad, and further failed to specify what burden is entailed in the production of the requested documents, let alone why any such burden should be considered undue. Accordingly, there is no basis to conclude that Plaintiff's requests are overbroad or unduly burdensome.

## III. Plaintiff's Failure To Clear The Date of the Records Deposition Was Not a Violation of Discovery Guideline 4, or Was Harmless.

Plaintiff's Notice of Records Deposition of the Custodian of Records for the BPD is not a deposition that typically contemplates the literal attendance of counsel, or of the custodian. Plaintiff's Notice itself specified that the "Appearance of deponent is not required so long as a certified copy of the requested information is received in our office before the above date and time." **Exhibit 1**, at page 5, ECF Paper No. 41. Therefore, the deposition should not be considered to fall within the purview of Guideline 4. However, even if Guideline 4 were

considered applicable, Plaintiff's failure to pre-clear the date specified in the Notice was harmless. Counsel have communicated freely, and at no time did counsel for the BPD request a different date. If he had done so, undersigned counsel would have been happy to cooperate. Additionally, the records were produced without the need for the custodian, or counsel, to appear.

## CONCLUSION

For reasons stated above, the BPD has not demonstrated good cause, pursuant to Fed. R. Civ. Proc. 26 (b)(1), for an order to quash portions of Plaintiff's Subpoena Duces Tecum of its Custodian of Records, and its Motion To Quash, In Part, Subpoena Duces Tecum and For Protective Order should be denied.

ENGEL & ENGEL, P.A.

_____/s/_____
Lon C. Engel #02470
11 East Lexington Street, Suite 200
Baltimore, Maryland 21202
(410)727-5095
(410) 727-1422(fax)
lengel@engellaw.com

*Attorney for Plaintiff*